IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION |
| KEITH GRIMES, | NO. 16-59 |
| Defendant. | |

## OPINION

**Slomsky, J.**                                                                                          **June 9, 2020**

## I.    INTRODUCTION

Before the Court is Defendant Keith Grimes' Motion for Pretrial Release.  (Doc. No. 109.)
Defendant filed the instant Motion on April 8, 2020, seeking release from custody pending trial
due to the COVID-19 pandemic and the concomitant risk it poses to him given his medical history.
(Id.)  The Government opposes the Motion.  (Doc. No. 110.)  On May 6, 2020, the Court held a
hearing, during which the parties presented evidence and arguments in support of their respective
positions.  (Doc. No. 112.)  Defendant's medical records (Doc. No. 113) and supplemental briefs
by the parties (Doc. Nos. 116, 117) were also filed.  For reasons that follow, the Court will grant
Defendant's Motion for Pretrial Release (Doc. No. 109).

## II.    BACKGROUND

On February 24, 2016, a grand jury returned an Indictment (Doc. No. 1) charging
Defendant with the following offenses:

1) Possession with intent to distribute a substance containing a detectable
amount of cocaine, a Schedule II controlled substance, and a substance
containing a detectable amount of marijuana, a Schedule I controlled
substance, in violation of 21 U.S.C. § 841 (Count I);

2) Possession with intent to distribute a substance containing a detectable
amount of cocaine, a Schedule II controlled substance, and a substance

containing a detectable amount of marijuana, a Schedule I controlled substance, within 1,000 feet of a public elementary school, in violation of 21 U.S.C. §§ 841 and 860 (Count II);

3) Possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1) (Count III); and

4) Possession of a firearm after having been convicted of a crime punishable by imprisonment for a term exceeding one year, in violation of 18 U.S.C. § 922(g)(1) (Count IV).

(Doc. No. 1.)[1]

On March 2, 2016, United States Magistrate Judge Marilyn Heffley ordered Defendant detained without bail prior to trial.  (Doc. No. 5.)  On March 14, 2016, Defendant filed a Motion for Reconsideration of Pretrial Detention (Doc. No. 11), which was a request for review of Judge Heffley's decision.  On April 21, 2016, the Court denied Defendant's motion.  (Doc. No. 25.)

Over the ensuing four years, Defendant, at the request of his counsel, repeatedly moved to continue his trial date.  As a result, he has been detained at the Philadelphia Federal Detention Center ("FDC") awaiting trial since March 2, 2016.  Trial is currently scheduled for July 13, 2020; however, given the present COVID-19 pandemic, that date is not realistic.  When the Court set the current trial date the effect of the COVID-19 pandemic on scheduling trials was not yet fully understood and therefore, through no fault of Defendant, it appears that a trial will not be held until the fall of 2020 at the earliest.

---

[1] Although the Indictment was returned on February 24, 2016, Defendant has been in custody since March 2, 2016.  Defendant maintains his innocence and has patiently waited for a trial while his lawyers requested continuances in order to properly prepare the defense.  The Government consented to the continuances.  Under the Bail Reform Act, despite a court detaining a person awaiting trial, the presumption of innocence still applies.  18 U.S.C. § 3142(j) ("Nothing in [18 U.S.C. § 3142] shall be construed as modifying or limiting the presumption of innocence.").

As noted, Defendant filed the instant Motion for Pretrial Release on April 8, 2020.  (Doc. No. 109.)  Defendant submits that he is a good candidate for pretrial release because he poses no risk of flight or danger to the community.  (Id. at 3.)  Defendant proffers that he does not pose either one because he is a lifelong Philadelphia resident, with strong ties to the community, and has a strong support system around him.  He is 33 years old and resided at 1826 Mountain Street in Philadelphia, Pennsylvania, for the twenty years preceding his arrest.  (PSR at 1-2.)  Before then, he lived on Wharton Street in Philadelphia, which was his residence since birth.  (Id.)  Prior to his arrest, Defendant was employed by the Home Maker Service of Metropolitan Area, where he had worked for more than two years.  (Id. at 2.)  Defendant also has a close relationship with his mother, Katrina Carr.  (Id. 1-2.)  If released, he will reside with her at her house located at 1032 Weston Drive, Williamstown, New Jersey 08094, and agrees to home confinement as a condition of bail.  (Doc. No. 117 at 2.)  He notes that he has no prior history of violence and two prior drug-related convictions, each occurring more than ten years ago.  (Id. at 3.)

Defendant also submits that pretrial release with conditions is appropriate because he has chronic asthma.  He avers that his asthma "poses an imminent threat to [his] life" given the conditions at the Philadelphia FDC, which prevent him from practicing social distancing.  (Doc. No. 3 at 1-2.)  To evidence his condition, Defendant provides medical records from the Philadelphia FDC detailing an extensive history of respiratory disease.  (Doc. No. 113.)  His records show that he has suffered respiratory problems since age 19.  (Doc. No. 113-5 at 1.)  At the Philadelphia FDC he undergoes "advanced practice provider follow-up encounter[s]" for "chronic care." (Doc. No. 113 at 9.)  The records also show that the Philadelphia FDC health services unit has prescribed for Defendant a wide variety of medications to try to keep his asthma under control.  These include an albuterol inhaler and a mometasone furoate inhaler, both of which

3

have been regularly refilled during Defendant's incarceration, as well as a prednisone oral tablet, and a methylprednisolone injection.  (Id. at 26-27.)

The records reveal that Defendant's course of treatment has not been particularly effective. They show that he has sought non-routine care for breathing problems on numerous occasions. Most recently, on January 25, 2020, Philadelphia FDC health services personnel saw Defendant for "chest tightness" related to asthma.  (Id. at 113.)  At that time, Defendant reported using his rescue inhaler "about 15x a day for the last three days."  (Id.)  FDC health services personnel treated Defendant with a "Solu-medrol IM" injection.  (Id.)  Defendant has also complained of asthma-related respiratory issues and sought non-routine treatment from the Philadelphia FDC's health services unit on March 14, 2016, January 14, 2017, February 2, 2017, December 2, 2018, and January 24, 2020.  (See id.)

On April 13, 2020, the Government responded to the Motion.  (Doc. No. 110.)  In the Response, the Government does not dispute that Defendant suffers from chronic asthma but contends that his "situation is presented by numerous offenders who are incarcerated as a result of their criminal conduct."  (Id. at 4.)  The Government also discusses the number of mitigation measures undertaken by the Bureau of Prisons ("BOP") to minimize the risk to defendants within the Philadelphia FDC.  These measures include (1) screening of all inmates and staff for COVID-19 symptoms; (2) restricting access to BOP facilities to only those performing essential services; (3) establishing quarantine areas within BOP facilities for infected detainees; (4) suspending social visits to BOP facilities; (5) suspending non-essential legal visits; (6) cancelling inmate and staff

travel among BOP facilities; and (7) modifying BOP operations to maximize social distancing.[2] (Id. at 4-8.)

On May 6, 2020, at a video hearing held before the Court, Defendant was present and counsel for both parties presented arguments in support of their respective positions.  (Doc. No. 112.)  Counsel for Defendant argued that Defendant does not pose a danger to the community or a flight risk, and that due to Defendant's medical vulnerability in the COVID-19 environment, he should be granted pretrial release.  Counsel stressed that Defendant's respiratory issues predate the pandemic, which bolsters his credibility.  He also noted that Defendant has had no disciplinary issues while incarcerated for the last four years.  Counsel suggested that Defendant be subject to house arrest with global positioning system ("GPS") tracking.  As noted, Defendant would reside with his mother, Katrina Carr, at her house located at 1032 Weston Drive, Williamstown, New Jersey 08094.

---

[2]     Over the past several months, Alisha Gallagher, an attorney employed by the Federal Bureau of Prisons, has kept the Court apprised of the BOP's efforts to prevent the spread of COVID-19 in the Philadelphia FDC, and provided updates to the Court when staff or inmates test positive for the coronavirus.  In a letter dated May 19, 2020, Gallagher confirmed that the BOP's mitigation measures discussed above will remain in effect until June 30, 2020.  In addition, Gallagher reported that on May 18, 2020, the Philadelphia FDC began testing all newly detained persons for COVID-19 prior to release to general population.  The testing procedure requires 14 days in quarantine, followed by testing using a nasal swab, which is sent to a laboratory for processing.  A detainee remains quarantined until the test result is received.  Gallagher also reported that, as of May 19, 2020, three staff members at the Philadelphia FDC had tested positive for coronavirus and recovered.  On June 2, 2020, Gallagher sent another letter to the Court, reporting that one arriving inmate tested positive for COVID-19 at the end of his quarantine period.  According to Gallagher, this inmate and his cellmate (who tested negative for COVID-19) will remain in quarantine for an additional 14-day period.  Both the inmate and his cellmate are currently asymptomatic.  On June 4, 2020, Gallagher sent an email to the Court, disclosing that a second inmate in the quarantine unit had tested positive for COVID-19 at the end of his quarantine period.  That inmate has been released from custody for time served, and the local health department has been informed of his release into the community.  The second inmate's cellmate tested negative for COVID-19 but will remain in quarantine for an additional 14-day period.

Defendant also testified and detailed the efforts he has made to better himself over the past four years, the viability of his proposed conditions of release, and the conditions at the Philadelphia FDC.  According to Defendant, he has taken approximately fifteen educational courses while incarcerated and is learning Spanish.  He also proffered that he is licensed to work with mentally handicapped individuals.  Defendant confirmed that his mother is willing to have him live with her at her home in Williamstown, New Jersey, and that the residence is more than 5,200 square feet, which is large enough to permit effective social distancing within the household, if needed.  He further explained that his mother is a successful real estate investor and a clinical psychologist and has the means to support him during his temporary release.  Defendant also stressed that the conditions within the Philadelphia FDC make it difficult to practice social distancing because he shares a cell with another inmate.

The Government countered that the Motion should be denied because Defendant's circumstances do not present a unique vulnerability to COVID-19.  According to the Government, Defendant's condition is presented by many other prisoners, and therefore is not compelling enough to justify release.  It also noted that new research suggests that asthma is not a leading comorbidity risk for COVID-19.  Furthermore, the Government asserted that Defendant previously violated the terms of release conditions, although Defendant contested the Government's assertion.[3]

---

[3]    At the hearing held on May 6, 2020, the Government contended that Defendant had previously violated pretrial release conditions because he was arrested twice in 2007 while released on bail by the Pennsylvania state court system.  Defendant acknowledged the arrests but argued that he had not violated any release conditions because the original arrest was somehow consolidated with the subsequent arrest(s), which had the effect of nullifying any violation of pretrial release.  In any event, the Court assigns little persuasive value to Defendant's alleged prior noncompliance with release conditions because they occurred more than twelve years ago.  Moreover, neither arrest led to any significant punishment.  All charges from the first arrest were dismissed for lack of prosecution and the charges relating to the second arrest

After the hearing, both the Government and Defendant filed supplemental memorandums. (Doc. Nos. 116, 117.)  Both sides essentially reiterated the arguments made during the hearing.

## III.   DISCUSSION

### A.  The Analytical Framework and Other Considerations Regarding Motions for Temporary Release Pursuant to 18 U.S.C. § 3142(i)

Defendant asks the Court to reconsider his pretrial detention in light of the danger posed by the current COVID-19 pandemic and his medical history.  He relies on 18 U.S.C. § 3142(i) as the statutory basis for his Motion.  That Section provides in part,

> [A] judicial officer may, by subsequent order, permit the temporary release of the person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for . . . [a] compelling reason.

18 U.S.C. § 3142(i).

As this Court noted in United States v. Gongda Xue,

> In light of the COVID-19 pandemic, Section 3142(i)'s potential applicability is clear, but whether relief is warranted under that Section is considered on a case-by-case basis.  Federal courts have been inundated with requests from defendants seeking release from detention due to the risks presented by COVID-19.  Case law on the subject has grown at a seemingly exponential pace.
>
> This Court has made every effort to stay apprised of the latest decisions and the analytical framework for reviewing Section 3142(i) requests filed in response to the current pandemic.  While there has been some discrepancy among courts about how these requests should be resolved, two guiding tenets have emerged.  First, the generalized risk of COVID-19 is not, in and of itself, a sufficient reason to justify release.  Second, Section 3142(i) motions must be considered within the larger context of the requirements of the Bail Reform Act.  Thus, resolving Section 3142(i) motions requires an

---

resulted in a guilty plea and a sentence of probation.  (Doc. No. 116 at 3.)  In addition, Defendant has complied with all orders of the Court in the instant case.  When he became aware of the arrest warrant against him, he immediately contacted counsel and turned himself in without incident.  (Doc. No. 11 at 2.)

> individual assessment of the movant's characteristics and circumstances in light of these two considerations.

No. 18-122, 2020 U.S. Dist. LEXIS 81282, at *15 (E.D.Pa. May 8, 2020) (tenet order modified).

First, courts have generally "rejected emergency motions for release . . . based solely on the generalized risks that COVID-19 admittedly creates for all members of our society." United States v. Denmark, No. 19-CR-15, 2020 U.S. Dist. LEXIS 73640, at *15 (M.D.Pa Apr. 27, 2020) (internal citations omitted). "Rather, at a minimum[,] courts have typically required proof of a '[d]efendant's particular vulnerability to the disease [in order to] constitute a compelling reason for release under § 3142(i).'" Id. (quoting United States v. Keith Kennedy, No. 18-20315, 2020 U.S. Dist. LEXIS 53359, at *4 (E.D. Mich. Mar. 27, 2020)). Recently, in related contexts, the Third Circuit Court of Appeals has endorsed this concept, requiring proof beyond COVID-19's generalized risks when a defendant seeks release from detention.

In United States v. Raia, in considering a petition for compassionate release, the Third Circuit stated,

> We do not mean to minimize the risks that COVID-19 poses in the … prison system, particularly for inmates … But the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify … release.

954 F.3d 594, 597 (3d Cir. 2020).

Similarly, in United States v. Roeder, in considering a motion for release from detention pending sentencing, the Third Circuit explained that,

> [T]he existence of a widespread health risk is not, without more, a sufficient reason for every individual subject to a properly imposed federal sentence of imprisonment to avoid or substantially delay reporting for that sentence[.]

No. 20-1682, 2020 U.S. App. LEXIS 10246, at *7 (3d Cir. Apr. 1, 2020).

Although neither case involved a motion for temporary release under Section 3142(i), the concept is "equally applicable" to this Section.  See Denmark, 2020 U.S. LEXIS 73640, at *15 (denying a defendant's Section 3142(i) motion and citing Raia and Roeder).  Thus, for a movant to satisfy his burden of proof under Section 3142(i), he must make an "individualized and specific showing of a compelling reason[.]"  United States v. Brown, No. 19-259, 2020 U.S. Dist. LEXIS 74193, at *11 (M.D.Pa. Apr. 28, 2020).  There is no "one-size-fits-all, blanket approach" to resolving this issue.  United States v. Nikparvar-Fard, No. 18-101-1, at *10 (E.D.Pa Apr. 20, 2020).

Second, decisions by other district courts make clear that a motion seeking temporary release under 18 U.S.C. § 3142(i) also includes a consideration of the Bail Reform Act as a whole.  See e.g., United States v. Green, No. 19-233, 2020 U.S. Dist. LEXIS 75950, at *12 (M.D.Pa. Apr. 30, 2020).  In this Act, Congress created a comprehensive set of statutory guidelines governing release and detention decisions for criminal cases in federal court.  One precept is that persons must be released so long as the court can be reasonable assured that they do not pose a flight risk or danger to the community.  18 U.S.C. § 3142.  To that end, detention is the exception; and to the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released.  Id.

In assessing what, if any, conditions can be fashioned, courts are directed to consider the factors enumerated in 18 U.S.C. § 3142(g).  Those factors include: (1) "the nature and circumstances of the offense charged[;]" (2) "the weight of the evidence against the person;" (3) "the history and characteristics of the person," including their financial resources, community and family ties, and record of appearing at court proceedings; and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g)(1)-(4).

In addition to these factors, the Bail Reform Act also requires district courts to weigh release decisions against certain statutory presumptions, including a presumption in favor of detainment for defendants charged with violent crimes or serious drug trafficking offenses.  In these cases, "[s]ubject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed," one of the enumerated offenses.  18 U.S.C. § 3142 (e)(3).  An indictment "is sufficient to support a finding of probable cause triggering the rebuttable presumption of dangerousness under § 3142(e)." United States v. Suppa, 799 F.2d 115, 119 (3d Cir. 1986) (noting that although the Government always carries the burden of persuasion, the probable cause determination predicated on an indictment merely shifts the burden of producing lack of evidence of dangerousness onto the defendant).

If a person is detained, Section 3142(i) provides a "limited safety valve provision," United States v. Washington-Gregg, No. 19-331, 2020 U.S. Dist. LEXIS 72355, at *14 (M.D.Pa. Apr. 24, 2020), enabling courts to re-examine detention decisions "to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).  But in the COVID-19 environment, this re-examination does not take place in isolation.  Rather, courts also have considered the following factors:

> (1) the specificity of the defendant's stated COVID-19 concerns, (2) the original grounds for the defendant's pretrial detention, (3) the extent to which the proposed release plan is tailored to mitigate or exacerbate other COVID-19 risks to the defendant, and (4) the likelihood that the defendant's proposed release would increase COVID-19 risks to others.

United States v. Deshields, No. 19-cr-99, 2020 U.S. Dist. LEXIS 73643, at *7 (M.D.Pa Apr. 27, 2020) (citing United States v. Clark, No. 19-40068, 2020 U.S. Dist. LEXIS 51390 (D. Kan. Mar.

25, 2020)) (series order amended).  "The court will not necessarily weigh these factors equally, but will consider them as a whole to help guide the court's determination as to whether a 'compelling reason' exists such that temporary release is 'necessary.'"  <u>Denmark</u>, 2020 U.S. Dist. LEXIS 73640, at *17 (quoting <u>Clark</u>, 2020 U.S. Dist. LEXIS 51390, at *3).

   **B.**      **Defendant's Motion for Pretrial Release Will Be Granted**

   Defendant's Motion will be granted because there is a compelling reason for his release to home confinement and there are conditions of release that can be fashioned to ensure the safety of the community and Defendant's appearance at trial.  In reaching this decision, the Court has considered Defendant's individual COVID-19 risk; the relevant factors under the Bail Reform Act, including the presumption in favor of detainment; and Defendant's proposed conditions of release in light of the COVID-19 environment.  No single factor was determinative; rather, a collective consideration led to the conclusion that Defendant should be released pending trial.  A discussion of each consideration is provided below.

   First, Defendant has shown the kind of particular vulnerability to COVID-19 necessary to establish a compelling reason for temporary release.  The objective medical evidence in this case shows he suffers from chronic asthma.  This is not a condition that arose when an asthma diagnosis would be beneficial.  He has dealt with respiratory disease since he was nineteen years old.  At the Philadelphia FDC, he undergoes "advanced practice" for chronic care, although his treatment does not appear to be particularly effective.  While Defendant has been prescribed a wide-variety of medication to manage his symptoms—including two kinds of inhalers, an oral medication, and various injections—he still regularly suffers respiratory distress requiring emergency treatment.  Indeed, in January 2020, before the danger presented by COVID-19 was fully understood, Defendant required emergency treatment after needing his rescue inhaler more than fifteen times

per day over a three-day span.  Similar complaints abound in his medical records, including a complaint made less than two weeks after he was first incarcerated in March 2016.

Given Defendant's chronic asthma, continued pretrial detention presents an exceptional and untenable risk to his health and safety.  COVID-19 is an undisputed and unprecedented public health crisis.  As a virus that impacts the respiratory system, the consensus medical opinion is that individuals with moderate to severe asthma are more vulnerable to severe forms of COVID-19.  As a result, Defendant has satisfied the requirement that he prove a particular vulnerability to COVID-19.

Second, a consideration of the present circumstances and the relevant factors under the Bail Reform Act also support Defendant's temporary release pending trial.  As discussed supra, the factors listed in 18 U.S.C. § 3142(g) and the circumstances posed by the COVID-19 pandemic guide our review.  Applied here, the facts and circumstances presently before the Court show that Defendant is a good candidate for pretrial release.

At the outset, the Court acknowledges that in April 2016 it ordered Defendant detained pending trial.  That decision, however, rested upon the statutory presumption that no condition or combination of conditions would reasonably assure his appearance and the safety of the community.  Under this presumption, Defendant bore the burden of proving that he would not pose these risks and the Court found he had not sufficiently rebutted the presumption.

Defendant still faces the presumption, but circumstances have changed.  Society is facing a viral pandemic that has already killed more than 100,000 Americans and the Court must take into consideration the new public health challenges posed by COVID-19 when making bail decisions under the Bail Reform Act.  Further, Defendant has seemingly improved himself since he was ordered detained pending trial in 2016.  Over the past four years he has shown a consistent

and meaningful effort to better himself.  He has completed more than fifteen educational courses at the Philadelphia FDC and is learning Spanish as a second language.  Moreover, it appears Defendant has been a model inmate during his incarceration.  He has no infractions despite opportunities to engage in malfeasance that may have presented themselves during the last four years.

Other considerations of the Bail Reform Act, including the relevant factors under Section 3142(g), support Defendant's temporary release pending trial.  Defendant is a lifelong resident of Philadelphia.  His community ties are in this federal circuit.  He was raised, educated, and employed here.  His mother, with whom Defendant has a good relationship, resides in nearby Williamstown, New Jersey.  Defendant also has no history of violence.  His two prior convictions do not establish that he is a violent person.  Moreover, he has been incarcerated for more than four years.  To commit an offense or violate bail conditions while on temporary release would not be in his best interest since Defendant would risk immediate reincarceration.  Further, given Defendant's heightened vulnerability to COVID-19 and the medical necessity of practicing social distancing, the reality is that the risk of commission of future crime is diminished.  And since he will be living with his mother and possibly continue his education, Defendant will have the benefit of a stable environment and a meaningful pursuit to occupy his time while detained at home.  In addition, strict conditions of bail will be imposed with home confinement with GPS tracking.  For all these reasons, Defendant has overcome the statutory presumption that he would pose a risk of flight or present a danger to the safety of the community.

Regarding the factor of the nature and circumstances of the offenses charged, there is no doubt that the offenses are serious and the Government has argued that the offenses have mandatory minimums that would exceed the time Defendant has been incarcerated, if he were

convicted of the offenses.  Needless to say, the Government believes it has a strong case and the factor of the weight of the evidence should result in continued detention.  But the Court cannot overlook the fact that Defendant is presumed innocent and even though he is cognizant of the Government's evidence against him, he has steadfastly maintained his constitutional right to a trial by a jury.  Although it would appear that these two factors might warrant detention, conditions can still be fashioned to assure the safety of the community and Defendant's appearance at trial.  Thus, the provisions of the Bail Reform Act support his temporary release pending trial.

Third, Defendant's proposed release plan is tailored to mitigate his COVID-19 risk.  At the Philadelphia FDC, Defendant shares a cell with another inmate.  As a result, he cannot take certain proactive measures, such as maintaining six feet of separation from other persons, that public health experts recommend to limit the risk of infection.  Additionally, it is clear that prisons present a breeding ground for COVID-19 transmission due to the large number of persons residing in close quarters.  Thus, if COVID-19 were to infiltrate the general population in the Philadelphia FDC, there would be little Defendant could do to insulate himself from the virus.[4]  In contrast, if Defendant was released to home confinement at his mother's house—a 5,200 square foot residence in Williamstown, New Jersey—he could protect himself from the virus by quarantining during the

---

[4]   To be clear, this is not a blanket statement that the Philadelphia FDC is generally unsafe. Indeed, to the contrary, the Court applauds the BOP for its efforts to prevent the spread of COVID-19 within its facilities.  The Court's decision stems from the fact that Defendant has made a particularized showing based on detailed medical documentation that his circumstances present an exceptional vulnerability to COVID-19 that can be mitigated by temporary release, and that conditions of release can be fashioned to assure the Court that Defendant does not flee or pose a danger to the community.  See United States v. Ruff, No. 18-561-2, 2020 U.S. Dist. LEXIS 91243, at *14-15 (E.D.Pa. May 26, 2020) (recognizing the BOP's efforts to prevent the spread of COVID-19 in the Philadelphia FDC but nevertheless determining that the defendant should be released pending sentencing due to his particular vulnerability to a severe form of COVID-19).

first fourteen days and practicing social distancing from family members as needed thereafter. Furthermore, the Court is assured that Defendant would remain in the household given the risk of contracting COVID-19 if he exposed himself to the public, and because he would be subject to GPS tracking as a condition of temporary release.[5]

In sum, Defendant has shown a compelling reason to justify release pursuant to Section 3142(i).  The severity of his asthmatic condition when considered in conjunction with the risks posed by continued incarceration establish a compelling reason for release.  Furthermore, the Bail Reform Act factors, viewed in light of the COVID-19 environment, support his temporary release, and his proposed conditions of release limit his risk of contracting COVID-19 and assure the Court that he will appear for trial and not pose a danger to the community.  For all these reasons, the Court will grant Defendant's request for temporary release from custody while awaiting trial and order Defendant released to home confinement with conditions.

IV.  **CONCLUSION**

For the foregoing reasons, Defendant's Motion for Pretrial Release (Doc. No. 109) will be granted.  An appropriate Order with all the conditions of bail will be issued along with this Opinion.

---

[5]   The fourth factor courts consider when evaluating Section 3142(i) motions in the COVID-19 environment—i.e., the likelihood that the defendant's proposed release would increase COVID-19 risks to others—is neutral.  While Defendant could contract COVID-19 if he remains incarcerated or if he is released, the risk of his transmitting it to others in either scenario is too speculative to be considered.  See United States v. Gongda Xue, No. 18-122, 2020 U.S. Dist. LEXIS 81282, at *26 n. 10 (E.D.Pa. May 8, 2020) (finding whether the defendant's proposed release would increase COVID-19 risks to others to be a neutral factor in the Section 3142 analysis given the speculative nature of COVID-19 transmission).