IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br> v.<br><br>KEITH GRIMES,<br><br>       Defendants. | CIVIL ACTION<br>NO. 16-59 |

**Slomsky, J.**                                   **April 7, 2022**

**OPINION**

**I. INTRODUCTION**

Before the Court is Defendant Keith Grimes's Motion to Suppress Evidence. (Doc No. 86.) In the Motion, Keith Grimes ("Defendant") challenges the legality of a search warrant under Franks v. Delaware for the search of property he owns at 2012 McClellan Street ("2012 McClellan Street") in Philadelphia, Pennsylvania. 438 U.S. 154 (1978). In Franks v. Delaware, the United States Supreme Court held that if an affidavit submitted in support of a search warrant contains a false statement, made knowingly or intentionally or with reckless disregard for the truth, it may be excised from the affidavit and if what remains does not establish probable cause, the evidence must be suppressed. 438 U.S. at 155-56.

Here, Defendant asks the Court to suppress all the evidence obtained during the November 18, 2015 search of 2012 McClellan Street. Specifically, Defendant states that his work timecards show that he was working when the police observed various drug transactions in which he was allegedly involved near 2012 McClellan Street, and therefore the affidavit of probable cause for the search warrant was made with reckless disregard for the truth.

1

The Government filed a Response in Opposition to Defendant's Motion to Suppress Evidence (Doc. No. 87), and the Court held a hearing on the Motion on July 21, 2021 (Doc. No. 131). For reasons that follow, Defendant's Motion to Suppress (Doc. No. 86) will be denied.

## II.    FINDINGS OF FACT

The search warrant describes the items to be searched for and seized at 2012 McClellan Street as follows:

> Crack cocaine and all other contraband identified as illegal drugs, paraphernalia, documents and records of drug business, ownership, occupancy of residence, US currency, ammunition, weapons and proceeds from illegal activity.

The affidavit submitted to justify the search and seizure of these items is quite long, consisting of twelve paragraphs printed in small type. The affidavit is provided below, with the portions Defendant seeks to excise under Franks v. Delaware highlighted in bold.

> I, P/O Jason Yerges #3695, your Affiant, am assigned to the Narcotics Field Unit and currently detailed to the FBI Drug Gang Task Force. I have been a sworn Police Officer with the Philadelphia Police Department since June 2009. I was also a Special Agent for the Drug Enforcement Administration in the Philadelphia and Los Angeles Field Division prior to being employed by the Philadelphia Police Department. I received specialized narcotics-related training given by DEA, FBI and Philadelphia Police Department. I have performed hundreds of investigations involving violations of the Pennsylvania Controlled Substances Act of 1972. My involvement in these investigations entailed surveillance, handling confidential informants, undercover purchases, and the preparation of search and seizures warrants. My training and experience have made me familiar with the ways in which narcotics are packaged for sales on the street and from houses for illegal distribution.
>
> On 3/2/2015, Sgt. Andrew Callaghan[1] interviewed FBI confidential human source (CHS) # S-00070491 in reference to illegal controlled substances that are being sold in South Philadelphia as well as other criminal intelligence. Present for the interview was Federal Bureau of Investigation (FBI) Special Agent Clinton Chlebowski. During the course of the interview, the CHS stated that Keith Grimes,

---

[1] Sergeant Andrew Callaghan ("Sergeant Callaghan") is a 30-year veteran of the Philadelphia Police Department. (Doc. No. 133 ¶ 2.) Sergeant Callaghan testified at the hearing on the Motion to Suppress that he knew Defendant before this investigation began because of his "prior police contact." (See Doc. No. 131 at 59.)

also known as (AKA) "Cool," is a twenty-nine year old black male that drives a dark grey Honda and that Grimes sells large quantities of cocaine on the 2000 Block of McClellan Street in South Philadelphia. This same CHS has provided information in reference to fugitives as well as other known drug dealers in the South Philadelphia area. Sgt. Callaghan determined this individual to be credible and knowledgeable in reference to illegal drug sales in South Philadelphia. This CHS also stated that he wishes to remain anonymous because he/she fears for his/her safety.

In October of 2015, Sgt. Callaghan interviewed a second person in reference to drug-related crimes in South Philadelphia. This interview was a post-arrest debriefing in reference to this and other ongoing drug investigations in South Philadelphia. This subject also stated that Keith Grimes sells cocaine and crack inside of a house on the 2000 black of McClellan Street and that he (Grimes) drives a Gray Honda Accord. Subject further stated that persons come to the house on McClellan Street to purchase cocaine. This subject also wanted to remain anonymous for fear of his/her safety. This subject was arrested for narcotics violations and indicated that he/she wishes to cooperate further on a confidential basis. A follow up interview will be conducted at a later date.

Sgt. Callaghan checked police databases and determined that Keith Grimes has an AKA of Keith Grines and has a criminal history for drug related crimes. Grimes criminal history information is listed under the FBI# 927088PC0, PA State ID 34415382 and PPN # 1032777. Grimes was arrested twice in 2007 for possession with intent to deliver narcotics under DC #'s 07-17-011362 and 07-17-048594. Both cases were for delivery of crack cocaine and he was found guilty in one case and pled guilty in the other criminal case. A check of other publicly available databases revealed that Grimes has recently reported using the following South Philadelphia addresses; 2012 McClellan Street,[2] 1635 S. 20th Street and 1836 Mountain Street.

On 10/07/2015, Sgt. Callaghan set up surveillance on the 2000 Block of McClellan Street at approximately 11:00 AM. When arriving on location, Sgt. Callaghan observed a grey Honda Accord parked near the front of 2012 McClellan Street with the PA Tag of JMJ2872. Sgt. Callaghan ran the tag and determined that the car was a 2009 Honda that was registered to Keith Grimes at 1836 Mountain Street in Philadelphia, PA. **During that surveillance, at approximately 11:09 AM, Sgt. Callaghan observed an older black male, wearing a black hat, black jacket and blue jeans approach the front of 2012 McClellan Street and knock on the door. The male entered, stayed for approximately two minutes then left.** After leaving the male walked east on McClellan Street and north on 20th Street. **At**

---

[2] Defendant claims that he rents this home out and that he does not live there, nor have access to it. (See Doc. No. 131 at 122.)

3

**approximately 11:40 AM, Sgt. Callaghan then observed another male wearing blue jeans, a white shirt and a dark jeff cap. That male entered the target location and also stayed approximately two minutes and left the location and the area.** Sgt. Callaghan was working solo and was unable to stop either person. The surveillance terminated at approximately 12:30 P.M.

On that same date, at approximately 2:30 PM, Sgt. Callaghan again conducted surveillance of the target location. Sgt. Callaghan observed Keith Grimes walking back and forth in front of 2012 McClellan Street on a cellular telephone. Grimes was wearing a green zip-front jacket, a white shirt and blue jeans. At approximately 2:45 PM, Grimes walked Eastbound on McClellan Street. Grimes walked past Sgt. Callaghan while talking on his cell phone. Grimes was laughing on the cell phone and Sgt. Callaghan heard him say, "A couple of grams" then he laughed again and said, "I can get whatever." A few minutes after 3:00 PM, Sgt. Callaghan again saw Grimes walking westbound on McClellan Street with a young male child who was wearing a tan coat. Grimes entered 2012 McClellan Street and the young male continued to walk W/B on McClellan Street. At approximately 3:15 PM, Grimes exited this target location without the jacket. Grimes was then wearing a long sleeve white t-shirt. Grimes met a black female on the 1900 Block of McClellan Street. The female was about 40 years old, had a black scarf on her head and was wearing a black coat with red sleeves. Sgt. Callaghan could see Grimes receive small objects from the female and then hand her small objects in return. The B/F then placed the items in her jacket pocket and walked E/B on 1900 McClellan Street. Shortly after that a black male approached Grimes. The black male was approximately forty-five years old, had short hair and a goatee, a long sleeve red shirt, blue jeans, and tan work boots. A similar transaction occurred and the male placed small objects into his right work boot that was open at the top. That male also walked eastbound on McClellan St. Sgt. Callaghan was still alone and could not stop either person.

On 10/14/2015, at approximately 2:00 PM, Sgt Callaghan again set up surveillance at the target location. The aforementioned Honda Accord was again parked in front of 2012 McClellan Street. At 2:27 PM, Sgt. Callaghan observed a dark colored Nissan (PA Tag HYB-8148) pull in front of 2012 McClellan Street. About 2:30 PM, a dark blue Infinity pulled on 20th Street and parked near McClellan Street. The tag on the Infinity was JJF8558 and the car was registered to Keith Grimes at 1836 Mountain Street. Sgt. Callaghan observed Keith Grimes exit the driver side of the car and walk to the target location. The unknown male driver of the Nissan then exited the Nissan and entered the trunk of the car, reached down and picked something up placing it under his blue jacket. Both males then entered 2012 McClellan Street. Approximately 2 minutes later the unknown male exited 2012 McClellan Street, went back into the trunk of the Nissan and placed something in the trunk. The male then entered the Nissan and drove westbound on McClellan Street.

4

The dark colored Nissan was registered to Sharia Pikney at 914 E Stafford Street. A check of Philadelphia Police Department databases revealed that the car has been stopped for traffic violations and Demitrius Faust was operating the car. Faust had two prior convictions for Narcotics Violations under DC #s 05-04-004283 & 07-17-048594. It was also determined that Faust was a codefendant of Grimes on the 2007 case.

At 2:40 PM, a dark colored mini-van drove down the 2000 block of McClellan Street and double parked in front of the target location. A heavyset black male with a bushy beard exited the van and walked into 2012 McClellan Street. The male had blue jeans and a dark blue coat with the hood pulled over his head. That male stayed in the house for about 1 minute then exited the house; re entered the mini-van and drove off. Sgt. Callaghan could not get the tag due to the angle that the van was parked from his observation point.

**On 10/15/2015 between the hours of 1:00 PM and 5:00 PM (exact time not provided for protection of CHS),[3] Sgt. Callaghan and TFO Jason Yerges met with CHS#8-0007194, who is a reliable CHS. Surveillance was established on 2012 McClellan Street. Grimes was observed exiting the residence and standing on the highway. The CHS was searched for narcotics, US currency and paraphernalia according to policy with negative results. The CHS was provided with $20.00 buy money and instructed to purchase Crack Cocaine from Grimes. The CHS was released in the area and met with Grimes. The CHS conducted an exchange of buy money for small objects with Grimes and returned to TFO Yerges handing over (1) red tint zip-lock packet containing an off-white chunk substance, alleged Crack Cocaine (PR#3212798). A small sample of the purchased item was field-tested, test NIK "G", positive for the presence of Cocaine Base and forwarded to the Police Chemical Laboratory for further analysis.**

**On 11/09/2015 at approximately 6:00 PM, Sgt. Callaghan was conducting surveillance of the target location and he observed a black female in a long tan sweater and blue jeans went towards the property but did not enter. Sgt. Callaghan observed the B/F conduct an exchange through the doorway with an unknown black male. The female then left E/B on McClellan and S/B on 20th Street.**

**On 11/16/2015 at approximately 1:30 PM, Sgt. Callaghan again conducted surveillance on the target location and observed the Philadelphia Gas Company on the block, working on the sidewalk in front of the target location. You affiant observed the target (Grimes) talking to the PGW employee. Grimes was wearing a t-shirt and blue jeans. At 1:35 PM, a white work van**

---

[3] Sergeant Callaghan testified at the hearing that the controlled buy took place at about 1:00 P.M. (See Doc. No. 133 ¶ 5.)

> **pulled over near where Sgt. Callaghan was conducting the surveillance. The passenger in the truck asked the driver (both black males) if he wanted "two?" The driver said, "yes" and handed the passenger money. The van then drove N/B on 20th Street out of Sgt. Callaghan's view. The passenger was a B/M, brown baseball hat with an "A" on it, brown jacket and blue jeans. The passenger then walked directly to the target location and knocked on the door. He was admitted into the target location. The driver of the van then walked back into Sgt. Callaghan's field of vision carrying a white bucket. That male sat on the steps of a house on 20th Street. That male was wearing a black baseball hat, a green shirt and blue jeans. The passenger of the van then exited 2012 McClellan Street walking E/B on McClellan and then N/B on 20th Street meeting the male. The passenger met with the van driver and sat on the steps next to him and handed him small objects. The male with the green shirt (Driver) then looked in his hand and picked small objects up with his other hand and then walked N/B on 20th Street.**
>
> Based upon the above facts and circumstances, including surveillances and one (1) controlled purchase by a reliable Confidential Informant, your Affiant believes that crack cocaine and drug proceeds are being packaged and stored inside of 2012 McClellan Street, and respectfully requests a daytime search and seizure warrant for same.

(See Gov. Ex. 3.)[4]

On November 18, 2015, at around 1:40 P.M., the search warrant was executed at 2012 McClellan Street.[5] (See Doc. No. 87 at 3.) Defendant was found in the living room of the house and taken into custody. (Id.) Evidence seized during the search included 12 individually knotted plastic bags containing cocaine, 3 individually knotted plastic bags containing crack cocaine, one bag containing approximately 133 grams of marijuana, and various narcotics trafficking and

---

[4] The dates referenced in the search warrant are October 7, 14, and 15, 2015 and November 9 and 16, 2015. October 7 and 14 were Wednesdays; October 15 was a Thursday; November 9 and 16 were Mondays. Given the days of the week and the times that Defendant Grimes alleges he was working, the bold portions of the search warrant affidavit would be the only parts which describe events that coincide with his work schedule.

[5] Defendant's car was also searched. (Doc. No. 87 at 3.) Police found $4,110 in cash and multiple articles of mail addressed to Defendant at 2012 McClellan Street. (Id.)

packaging paraphernalia (such as a grinder, digital scale and pot, all bearing white residue), among other items. (Id.)

At the heart of Defendant's Motion to Suppress are his work timecards that indicate he was working a few of the times that Sergeant Callaghan observed these various drug transactions. During the relevant time, Defendant worked as a home health care aide, taking individual clients to doctors' appointments and picking up medication, among other things. (See Doc. No. 131 at 141-42.) The timesheets show that Defendant works Monday through Friday from 8:00 A.M. to 2:00 P.M. and then 4:00 P.M. to 8:00 P.M. (See Doc. No. 86-1.)[6] Thus, Defendant argues that Sergeant Callaghan and Officer Yerges recklessly made assertions in the search warrant affidavit when they included observations of Defendant selling drugs out of 2012 McClellan Street during times he was working, in violation of Franks v. Delaware.

## III.   CONCLUSIONS OF LAW

As stated, in Franks v. Delaware, the Supreme Court held that where a defendant makes a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request."[7] 438 U.S. 154, 156 (1978).

Here, the Court granted Defendant's request and a Franks hearing was held on July 20, 2021. (See Doc. No. 128.) The following individuals testified at the Franks hearing: Sergeant

---

[6]   Defendant also works on Saturdays from 8:00 A.M. to 2:00 P.M. and from 6:00 P.M. to 8:00 P.M. (See Doc. No. 86-1.) However, these timeslots are not relevant to the Franks analysis because the surveillances and the controlled buy detailed in the search warrant affidavit occurred on weekdays.

[7]   Defendant's Motion focuses on the reckless disregard for the truth prong of Franks. Therefore, the knowing and intentional prong will not be discussed further. (See Doc. No. 86 ¶ 4.)

Andrew Callaghan, Officer Jason Yerges, and Defendant. Sergeant Callaghan and Officer Yerges testified about their observations detailed in the search warrant affidavit and Defendant testified about his work schedule and timecards.

At the hearing, Defendant had to establish by preponderance of the evidence that the allegations in the search warrant were made with reckless disregard for the truth. Franks, 438 U.S. at 156-57. If this burden was met, Defendant then had to show that "with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause." Id. Thus, "the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit." Id. "Accordingly, in order to void the warrant and suppress the evidence, [Defendant] must show both 1) that bad faith or reckless disregard existed on the part of the affiant, and 2) that there would have been no probable cause but for the incorrect statement." United States v. Shields, 458 F.3d 269, 276 (3d Cir. 2006) (citing cases).

**A. The allegations in the search warrant affidavit were not made with reckless disregard for the truth because Defendant's work timesheets do not conclusively establish his physical location at a given time.**

Defendant has not established by preponderance of the evidence that the statements in the search warrant affidavit were made with reckless disregard for the truth. As noted previously, Defendant submitted timecards that purportedly show he was working during times when Sergeant Callaghan claims he saw him engaging in drug transactions. (See Doc. No. 134 at 3-4.) Most importantly, Defendant claims that he was working during the one time the controlled-buy occurred and therefore he was not at 2012 McClellan Street. (Id.) The other critical times challenged are October 7 from 11:09 A.M.- 12:30 P.M., October 15 at 1:00 P.M., November 9 at 6:00 P.M., and November 16 at 1:30 P.M.

In Wilson v. Russo, the Third Circuit set forth the standard to use in evaluating a claim of "reckless disregard for the truth" when misstatements or omissions are made in a search warrant affidavit:

> In evaluating a claim that an officer both asserted and omitted facts with reckless disregard for the truth, we hold that: (1) omissions are made with reckless disregard for the truth when an officer recklessly omits facts that any reasonable person would want to know; and (2) assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting.[8]

United States v. Yusuf, 461 F.3d 374, 383 (3d Cir. 2006) (quoting Wilson v. Russo, 212 F.3d 781, 783 (3d Cir. 2000)). Further, "[n]egligence or innocent mistake [is] insufficient" to establish reckless disregard. Id. (quoting Wilson, 212 F.3d at 787).

Here, Defendant has not shown by preponderance of the evidence that the statements in the search warrant affidavit were made with reckless disregard for the truth by Police Officer Jason Yerges, the affiant, or by Sergeant Callaghan, who provided the details of the surveilled events to Yerges. During his testimony at the July 20, 2021 hearing, Defendant conceded that his work timecards do not indicate his exact location:

> Q. … So, here's my question to you, Mr. Grimes. You've given us a lot of different timesheets here. Are you telling the Court that at every single time that it says you were working from 8:00 to 2:00, you were actually working from 8:00 to 2:00, and every time it says you were working from 4:00 to 8:00, you were actually working from 4:00 to 8:00?
>
> Mr. Grimes. Yes, I was.
>
> Q. Okay. You were with these people [his clients], right?
>
> Mr. Grimes. Yes.
>
> Q. Performing your duties officially as a home health care aid[e].
>
> Mr. Grimes. Yes, sir.

---

[8] Omissions in the search warrant affidavit have not been raised here by Defendant.

…

Mr. Grimes. I mean… you make it as if, like I said, like I'm – like, when I have my clients, we're not mobile or we're not going places. Like, we have to go to physical therapy, take their medicine, go shopping. Like, we go a lot of places. It's not like I'm in an office, like, set one particular place.

…

Q: So, Mr. Grimes, I think that I've – we've – we've gone around in circles about this, and I think we're actually on the same page. You would agree with me there are many times in which your timesheets say that you're working, but you were not physically at whatever address these people are who you are a caretaker for, correct?

Mr. Grimes. Yes, yes, I can concede to that.

(See Doc. No. 131 at 141-42, 171, 176.)

It is evident from this testimony that Defendant's timesheets do not exclude the fact that the persons he worked for were not taken to his property on McClellan Street or that he had downtime either with the people he assisted or between visits with them. Further, the search warrant for 2012 McClellan Street was executed on Wednesday, November 18, 2015, at 1:40 P.M., a time when, according to Defendant's timesheets, he would be working. (See id. at 46.) While Defendant claims he was at the property just to collect his mail (see id. at 128), this diversion is further evidence that his work timesheets may not confirm his actual location or work schedule. Finally, Defendant has offered no evidence to show that Officer Yerges and Sergeant Callaghan, when submitting the search warrant affidavit for approval by a court, had obvious reason to doubt the truthfulness of what they were asserting. Their credibility for purposes of the Franks issue remains intact. (See Doc. No. 87 at 7-8.)

     **B. Even when Officer Yerges and Sergeant Callaghan's observations made during times Defendant contends he was working are excised from the search warrant affidavit, it still contains probable cause to support the search of 2012 McClellan Street.**

    Even if the Court excised the portions of the search warrant affidavit allegedly contradicted by Defendant's work timesheets, it still contains probable cause. Defendant's assertion to the contrary is unavailing.

    The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." United States v. Fautz, 812 F.Supp.2d 570, 603 (D. N.J. 2011) (citing U.S. CONST. amend. IV.) Probable cause is established if there is a fair probability that contraband or evidence of a crime will be found in a particular place and is based on the "totality of the circumstances" available at the time of the search. Gomez v. Markley, 385 Fed.Appx. 79, 82-83 (3d Cir. 2010) (quoting Illinois v. Gates, 462 U.S. 213, 235 (1983)). In addition, "reasonable minds frequently may differ on the question of whether a particular affidavit establishes probable cause," so the United States Supreme Court has "concluded that the preference for warrants is most appropriately effectuated by according 'great deference' to a magistrate's determination." United States v. Leon, 468 U.S. 897, 914 (1984) (citing cases).

    Even when disregarding the controlled buy and other challenged drug transactions during the times when Defendant was working, the search warrant affidavit is still supported by probable cause. Sergeant Callaghan interviewed his first confidential informant in March of 2015, who told him that Defendant was selling drugs at the 2000 block of McClellan Street and that Defendant drove a grey Honda. (Doc. No. 133 ¶17.) This same source has provided information to the Philadelphia Police Department before and has proven to be reliable. (Id.) In October 2015, Sergeant Callaghan interviewed another source that also stated that Defendant was selling drugs

on the 2000 block of McClellan Street and drove a grey Honda. (See Gov. Ex. 3.) And a database search revealed that Grimes had a prior conviction in 2007 for delivery of crack cocaine and used the address at 2012 McClellan Street. (Id.)

Based on this information, Sergeant Callaghan started surveilling the 2000 block of McClellan Street, particularly 2012 McClellan Street. (Doc. No. 133 ¶ 3.) On October 7, 2015, at about 2:45 P.M., Defendant walked by the surveillance vehicle, where Sergeant Callaghan overheard him say "a couple of grams" and "I can get whatever." Then, Sergeant Callaghan witnessed two transactions involving Defendant. First, at about 3:00 P.M., a female walked up to Defendant and the two engaged in a hand-to-hand transaction where small objects were passed between the two. (Id. ¶ 3.) Second, shortly thereafter on that same day, he saw a similar transaction between Defendant and "a male with a goatee" who placed a small object Defendant gave him into his work boot. (Id.) Moreover, the grey Honda Accord registered to Defendant was parked near the front of 2012 McClellan Street. (Id.)

On October 14, 2015, at approximately 2:00 PM, Sergeant Callaghan saw Defendant's grey Honda parked outside 2012 McClellan Street. (See Gov. Ex. 3.) He then observed a dark colored Nissan and a dark blue Infinity pull up near McClellan Street. (Id.) The dark blue Infinity was registered to Defendant and the dark colored Nissan had previously been stopped for traffic violations while a man named Demitrius Faust was operating the car. (Id.) Faust was Defendant's co-defendant in the 2007 drug case. (Id.) Sergeant Callaghan then saw an unknown male and Defendant enter 2012 McClellan Street, with the unknown male leaving approximately two minutes later. (Id.) Before leaving McClellan Street, the unknown male placed something in his trunk. (Id.)

The totality of these circumstances, when considered without reference to the excised portions of the affidavit, show that there is fair probability that contraband or evidence of a crime will be located inside 2012 McClellan Street. Two reliable confidential informants told Sergeant Callaghan that Defendant was selling drugs on the 2000 block of McClellan Street and that he drove a grey Honda. Their information was corroborated by surveillances made by Sergeant Callaghan and even by words spoken by Defendant that were overheard by the Sergeant: "a couple of grams" and "I can get whatever."

The grey Honda was registered to Defendant at the address 2012 McClellan Street. In addition, the car was parked near the residence and Defendant was observed going inside with an unknown male who left the residence two minutes later. The car driven by the unknown male had been stopped when driven by a co-defendant of Defendant in a prior drug case. Two other street transactions were witnessed by Callaghan in which small objects were exchanged between Defendant and unknown individuals.

The totality of these circumstances support the fair probability that Defendant was selling illicit drugs and that evidence related thereto would be found inside the house at 2012 McClellan Street. Thus, even without the excised portions of the search warrant affidavit, probable cause has been established and the evidence seized from the house will not be suppressed under Franks v. Delaware.

**IV. CONCLUSION**

For the foregoing reasons, Defendant's Motion to Suppress will be denied. An appropriate Order follows.